**Louis S. BULLARD, Special Agent, FBI, Plaintiff-Appellee Cross-Appellant,**

v.

**William H. WEBSTER et al., Defendants-Appellants Cross-Appellees.**

No. 78–3421.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1980.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Robert E. Kopp, Patricia G. Reeves, App. Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants cross-appellees.

Alben N. Hopkins, Gulfport, Miss., for plaintiff-appellee cross-appellant.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant William H. Webster, Director of the Federal Bureau of Investigation (FBI), appeals from a judgment of the United States District Court for the Southern District of Mississippi granting a permanent injunction against the lateral transfer of Special Agent Louis S. Bullard from Gulfport, Mississippi, to Newark, New Jersey. Appellant claims that the grant of the permanent injunction was improper because the FBI's decision to transfer a special agent is not judicially reviewable. In the alternative, if a broader standard of review is applicable, appellant contends that Bullard did not possess a property interest in remaining in his office of preference and there was thus no violation of the due process clause. Bullard cross-appeals, claiming he is entitled to attorney's fees. We reverse the district court with respect to the merits of the case and affirm as to the attorney's fees.

Louis Bullard is a Special Agent of the FBI. He has been assigned to the FBI office in Gulfport, Mississippi since 1968. In late 1977, Bullard was investigated by the FBI on charges of misconduct involving his guarding of a female juror who had signed a statement admitting that she accepted a bribe in order to cause a hung jury. An obstruction of justice investigation was instituted and several FBI agents were assigned to protect her in a Gulfport, Mississippi motel. Bullard and a second agent were assigned the shift from 4:00 p.m. to midnight. When their replacements arrived, they learned that Bullard and the second agent were in the motel bar with the juror. The second agent escorted the juror back to the motel room. When Bullard later appeared, he was carrying an alcoholic beverage and he had alcohol on his breath and impaired speech. Other agents observed Bullard enter the juror's room and close the door. He was later found lying on the bed, fully clothed, next to the juror while watching television. Later that night, Bullard drove home in a government automobile while apparently in somewhat of an intoxicated state. By a letter dated January 17, 1978, Bullard was censured, placed on probation, and suspended for five days beginning January 18, 1978 after a review of his misconduct by FBI headquarters.

During the course of the investigation of Bullard, the Assistant Special Agent in charge of the Jackson, Mississippi office concluded that Bullard's effectiveness in the Jackson Division had been damaged. His working relationship with other agents and the United States Attorney's Office in Jackson had become significantly impaired. Therefore, the Special Agent in charge recommended that Bullard be transferred to another office. The transfer was not recommended as further disciplinary action for the incident that occurred in November 1977. The Administrative Services Division at FBI headquarters agreed that Bullard had lost his effectiveness in Jackson and recommended that he be transferred. A decision was made at FBI headquarters to transfer Bullard to Newark, New Jersey, effective March 1, 1978. Newark was chosen because that office was critically understaffed and because it specifically needed accountants. Bullard was an accountant.

Following the FBI's denial of Bullard's request to delay his transfer until he could prepare an administrative appeal using information requested under the Freedom of Information Act, Bullard filed an action for permanent injunctive and declaratory relief in the United States District Court for the Southern District of Mississippi on February 24, 1978. The district court entered temporary restraining orders on February 27, 1978 and March 10, 1978, directing the FBI not to transfer Bullard and not to interfere with his right to an administrative appeal or to obtain documents through FBI channels.

The district court conducted a hearing on the question of whether to issue a preliminary injunction on March 16, 1978. Testimony was presented by the acting Special Agent in charge of the Jackson Division, the current Special Agent in charge of the Jackson Division, and a representative from FBI headquarters. Bullard also testified

that he had consented to the following written condition in 1962:

It is understood you are to proceed on orders to any part of the United States or its possessions where the exigencies of the service may require, and it should be clearly understood that you will be completely available for any assignment whatever and whenever the needs of the service demand * * *. Further, you cannot expect assignment to an office of your own preference.

In addition, Bullard admitted that he had initialled a similar agreement to be transferred each year and as recently as March 1977.

After the hearing, the district court granted permanent injunctive relief on May 17, 1978 from the transfer, pending the exhaustion of Bullard's administrative appeal. On March 24, 1978, the government filed a "Notice of Delivery of Records" stating that the FBI had given Bullard all of the documents and materials he had requested. On April 19, 1978, the FBI filed a motion to vacate the injunction on the grounds that Bullard had not yet made an attempt to pursue an administrative appeal. A hearing was held on the motion to vacate on June 30, 1978. The district court denied the motion to vacate on July 5, 1978, because Bullard had pursued his administrative appeal on June 28, 1978. On July 28, 1978, the FBI Director wrote to Bullard and advised him that:

I have reviewed this entire matter and find that the action taken in your transfer out of Gulfport, Mississippi, and to Newark, New Jersey, was completely justified. The transfer decision was based upon information developed during an administrative inquiry into this matter and included in your statements.

I find no basis for reversing the transfer action taken by this Bureau and your appeal is hereby denied.

Another hearing was held on August 30, 1978. On September 19, 1978, the district court entered a final judgment in favor of Bullard that permanently enjoined his transfer from Gulfport. This appeal follows.

I. Reviewability of Transfer Decision.

As a general rule, a person who suffers a legal wrong because of an agency action or who is adversely affected or aggrieved by an agency action within the meaning of a relevant statute is entitled to judicial review of the agency action.[1] 5 U.S.C. § 702. While Section 702 does not set forth the appropriate standard of review to be applied to an agency's actions, the right to judicial review is not available to the extent that the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The burden of proving nonreviewability is that of the agency involved. *See Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). That burden is much easier in this case because special agents of the FBI are not afforded many of the procedural safeguards available to other government employees. First, persons in the FBI are excepted from the competitive

---

1. The actual language of § 702 is as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

civil service. 28 U.S.C. § 536. Therefore, FBI employees do not have the procedural rights guaranteed members of the competitive civil service. 5 U.S.C. § 7501(b). Also, Bullard is not a "preference eligible veteran," a status that would afford him additional protections. 5 U.S.C. § 7512. Therefore, neither the protections of the Administrative Procedure Act, 5 U.S.C. § 7501 *et seq.*, nor the Veterans Preference Act, 5 U.S.C. § 7511 *et seq.* are available to Bullard.

■ In the absence of a statute that explicitly precludes judicial review, an agency action is committed to the agency's discretion and is not reviewable when an evaluation of the legislative scheme as well as the practical and policy implications demonstrate that review should not be allowed. *Local 2855 v. United States*, 602 F.2d 575 (3rd Cir. 1979). There must be a weighing of the need for, and feasibility of, judicial review versus the potential for disruption of the administrative process. *Kletschka v. Driver*, 411 F.2d 436 (2d Cir. 1969). Criteria suggested by the Third Circuit in *Local 2855* for making such a determination include (1) the broad discretion given an agency in a particular area of operation, (2) the extent to which the challenged action is the product of political, economic or managerial choices that are inherently not subject to judicial review, and (3) the extent to which the challenged agency action is based on some special knowledge or expertise. In light of these standards and these factors, we find that the decision to transfer Bullard is not reviewable.

■ It would not be feasible for the courts to review each decision by the FBI to transfer a special agent. The FBI must be able to assess their manpower needs in a certain city or area of the country and be able to transfer an agent from Gulfport to a critically understaffed office in Newark. The FBI must be able to transfer an agent with accounting expertise to an office needing help in that area without interference from the courts. For the good of the agency, the FBI should be able to transfer an agent from one area of the country where

he has lost his effectiveness in dealing with his co-workers without subjecting this decision to judicial scrutiny. The decision, which we deem not reviewable for determining if it was factually substantiated, was based on strained personal relationships between Bullard and the other agents and the United States Attorney. The FBI must have flexibility in making transfer decisions in order to operate the agency efficiently. Where the challenged personnel decision involves a transfer, the courts should generally not undertake a full substantive review of the decision but should still ensure that the complainant's procedural rights are satisfied. The FBI Manual of Administrative Operations provides merely for informal communication with the Director of the FBI. Bullard's appeal to the Director satisfied this procedural safeguard. As the Second Circuit stated in *Kletschka*,

> The general refusal of the courts to review the merits of personnel decisions finds additional support in the difficulty of verifying or refuting the wisdom of judgments based on partly intuitive assessments of personal competence and the ability of one man to work in harmony with others.

411 F.2d at 443.

Bullard presents us with no basis, statutory, regulatory, or otherwise, for reviewing the decision of the FBI. On the contrary, the Attorney General is empowered to establish regulations for the conduct of employees and the allocation of agency business. 5 U.S.C. § 301. Pursuant to this grant of power, the Attorney General promulgated the following regulation:

> . . . the Director of the Federal Bureau of Investigation is authorized to exercise the power and authority vested in the Attorney General by law to take final action in matters pertaining to the employment, direction, and general administration (including appointment, assignment, training, promotion, demotion, compensation, leave, classification, and separation) of personnel, including personnel in wage board positions, in the Federal Bureau of Investigation.

28 C.F.R. § 0.137. A transfer decision is based upon complex considerations of agency requirements as well as the ability and personal characteristics of the employee. *Bramley v. Webster,* 476 F.Supp. 351 (E.D. Pa.1979). Because this is not a decision that, balancing the need for review against the burden it imposes, should be examined by the courts, we hold that the district court erred and must accordingly be reversed.

 In order to succeed on the due process claim, Bullard must show that he has a cognizable property interest in remaining at the Gulfport office. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). But Bullard is precluded from asserting such a property interest in light of his actions. In 1962, he signed a letter in which he specifically consented to the following written conditions:

> It is understood you are to proceed on orders to any part of the United States or its possessions where the exigencies of the service may require, and it should be clearly understood that you will be completely available for any assignment whatever and whenever the need of the service demand * * *. Further, you cannot expect assignment to an office of your own preference.

Bullard initialled a similar agreement each year and as recently as March 1977. As such, Bullard cannot claim that he has a property interest in retaining his office of preference in Gulfport.

II. Attorney's Fees.

The district court denied Bullard's claim for attorney's fees and he cross-appealed. While there is no indication that the district court considered Bullard's Freedom of Information Act (FOIA) claim when it denied attorney's fees, the denial should be affirmed even if that claim was considered. A court "may assess" reasonable attorney's fees and other costs in any case brought under the FOIA where the complainant has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). First, there is no indication that Bullard's request for information in order to pursue his administrative appeal was sufficient to state a cause of action under the FOIA. Second, there is no indication that the FBI only produced the documents in response to the court order or that the FBI opposed furnishing the information. It is not enough that Bullard requested information and it was provided. The FBI would have to oppose the release of the documents and Bullard would have to substantially prevail. *Vermont Low Income Advisory Council v. Usery,* 546 F.2d 509 (2d Cir. 1975). Third, the award of attorney's fees is within the sound discretion of the court. There is no indication that the trial court abused its discretion in denying the award, especially in light of the clear lack of any public benefit from Bullard's suit. *See Blue v. Bureau of Prisons,* 570 F.2d 529 (5th Cir. 1978).

REVERSED IN PART; AFFIRMED IN PART.