**SGA FINANCIAL CORPORATION and Martin Zell, Plaintiffs,**

v.

**UNITED STATES SMALL BUSINESS ADMINISTRATION, Vincent N. Scuro, Newark District Small Business Administration, Anschelewitz, Barr, Ansell & Bonello, Esqs., and Athlete's Choice Corp., Defendants.**

**Civ. No. 79–3384.**

United States District Court, D. New Jersey.

Feb. 27, 1981.

**394**

James P. Yudes, Cranford, N. J., for plaintiffs.

Eric S. Benderson, Washington, D. C., William W. Robertson, U. S. Atty. by Anne C. Singer, Asst. U. S. Atty., Newark, N. J., for defendants.

## OPINION

SAROKIN, District Judge.

Plaintiff in this action, SGA Finance Corporation ("SGA"), is a New Jersey corporation which, among its other business activities, "packages" loan applications for small businesses who are seeking loans under various federal programs. Defendant, United States Small Business Administration ("SBA"), is a federal agency which administers a federal loan program for qualified small businesses. SBA's loan program is administered through its district offices. Included as a defendant is Vincent Scuro, Chief, Financing Division, SBA Newark District Office.

Plaintiffs commenced this action in November 1979. The several counts of the complaint allege that defendants SBA and Scuro have systematically reduced to an unreasonable level the fees that plaintiffs charge loan applicants for application packaging. Plaintiffs allege that such fee reductions are in contravention of regulations promulgated by SBA. The complaint also alleges that defendant Scuro has interfered with the lawful conduct of plaintiffs' business and has maliciously conspired to prevent plaintiff from continuing in the loan packaging business. Plaintiff asserts jurisdiction under 5 U.S.C. §§ 704, 706 (1976); 28 U.S.C. § 1346(b) (1976).

Defendants' motion for summary judgment was granted in July 1980 on the grounds that judicial review of the agency actions in question is barred by § 10(a)(2) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2) (1976). Plaintiffs have moved for reconsideration of said determination.

### FACTUAL BACKGROUND.

Plaintiff SGA has been in the loan packaging business since March 1976. Pursuant to 13 C.F.R. 103.13–6,[1] the SBA requires all agents[2] who assist applicants in the appli-

---

1. 13 C.F.R. 103.13–6 (1980) provides:

   SBA reserves the right to require any Agent or Applicant to execute an agreement governing the compensation charged for services to be rendered to such applicant in any matter coming before the SBA. Such agreement will provide, among other things, (a) that if the amount of compensation charged for such services shall not be deemed reasonable by SBA, such Agent will reduce the charge for such services to such amount as shall be deemed reasonable by SBA, and will not, directly or indirectly, charge or collect from the Applicant or any other person, for such services, any sum in excess of the amount deemed reasonable by SBA; (b) that if such Agent has heretofore collected from the Applicant, or any other person, as compensation for any such services any amount deemed unreasonable by SBA, such Agent will refund to Applicant or such other person such sums as are in excess of the amount deemed reasonable by SBA.

2. "Agent" is defined in 13 C.F.R. 103.13–2 (1980):

   For purposes of this part:

cation process to sign an agreement ("SBA Form 159") not to charge fees for services in excess of what SBA deems to be reasonable and to refund any amounts paid in excess of this figure.[3] During the time that plaintiff has been engaged in the loan packaging business, a number of loan applications prepared by SBA have been processed by SBA Newark and defendant Scuro in his capacity as Chief of SBA Newark's Financing Division. The fees claimed by SGA for its packaging services were reduced by SBA in connection with at least six of these applications. Typical of the decreases was a reduction to $308 from a claimed fee of $1,250. Plaintiff alleges that the claimed fees were already well below the actual cost of the services rendered and that continuation of the pattern of reductions will make its business an economic impossibility.

In November 1979, SBA also required that an SGA fee of $1250 be placed in escrow before allowing closing to proceed on a loan granted under one of the SBA's programs. Plaintiff charges that these and similar actions have seriously interfered with its working relationship with local banks.[4] Seven loan applications packaged by SGA are now pending before SBA Newark. Plaintiff SGA is seeking punitive and compensatory damages as well as declaratory relief as to defendants' allegedly illegal application of its own regulations. Plaintiff also seeks attorney's fees and costs.

## ISSUES PRESENTED.

This action involves the interrelation of the judicial review provisions of the Administrative Procedure Act ("APA") and certain regulations promulgated by the SBA pursuant to the general authority conferred upon it by the Small Business Act of 1953 ("the Act"), 15 U.S.C. §§ 631–647, *as amended* (1976).

Section 10(a) of the APA provides that a person who is ". . . adversely affected or aggrieved by agency action is entitled to judicial review of that action." 5 U.S.C. § 702. This general right of review is limited by § 10 ". . . to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Agency decisions that fall within either of these two exceptions may not be reviewed even for abuse of discretion. *Local 2855, AFGE v. United States,* 602 F.2d 574, 580 n. 15 (3d Cir. 1979). Defendants contend that SBA decisions regarding reasonable fees for loan packaging services are "committed to agency discretion by law", and, therefore, that judicial review of such decisions is precluded by § 10(a)(2) of the APA. Plaintiffs argue to the contrary that there is no indication of a Congressional intent to remove SBA decisions respecting fees from judicial review, and that the agency cannot itself create nonreviewability through its general authority to promulgate rules and regulations. The court rejects this argument and

(b) "Agent" shall include attorneys, accountants, consultants, manufacturers' representatives, and any other persons acting in a representative capacity.

(c) The term "appear before SBA" shall include

(1) the preparation or submission on behalf of an Applicant of applications for financial assistance

**3.** SBA Form 159 is entitled "Compensation Agreement for Services in Connection with Application and Loans From (or in Participation with) Small Business Administration". The form provides in pertinent part:

This undersigned representative (attorney, accountant, appraiser, etc.) hereby agrees that the undersigned has not and will not, directly or indirectly, charge or receive any

payment in connection with the application for or the making of the loan except for services actually performed on behalf of the Applicant. The undersigned further agrees that the amount of payment for such services shall not exceed an amount deemed reasonable by SBA . . . and to refund any amount in excess of that deemed reasonable by SBA. . . . This agreement shall supersede any other agreement covering payment for such services.

**4.** In September 1976 and August 1977, plaintiff was the subject of two investigative reports, undertaken by SBA Newark in response to complaints that SGA was charging excessive fees for its services and tying the purchase of these services to the purchase of insurance. Subsequent to the filing of these reports, no further action was taken by SBA.

finds that decisions as to fees have been "committed to agency discretion by law". Plaintiffs' motion for reconsideration of the court's decision granting defendant's motion for summary judgment is denied.

## STATUTORY BACKGROUND.

■ The Act was intended to advance the goal of a freely competitive economy by promoting the economic viability of small businesses. Section 2[2] of the Act provides in pertinent part that the assistance programs established under the Act are intended to "... assist in the establishment, preservation, and strengthening of small business concerns and improve the managerial skills employed in such enterprises ..." 15 U.S.C. § 631(b).[5] The legislative history of the Act confirms this intent. See H.R.Rep. No.494, 83rd Cong., 1st Sess. 3, reprinted in [1953] U.S.Code Cong. & Ad.News 2020, 2022.

■ In order to carry out the goals of the Act, Congress established a business loan and investment fund, 15 U.S.C. § 633(c), and an agency, SBA, 15 U.S.C. § 633(a) to oversee the administration of this fund and the other assistance programs established by the Act.[6] SBA is given broad general powers under the Act. See generally 15 U.S.C. §§ 634, 636, 637. Section 2[5] of the Act also gives the Administration authority to "make such rules and regulations as [it] deems necessary to carry out the authority vested in [it] by or pursuant to this chap-

ter." 15 U.S.C. § 634(b)(6). The SBA's authority to grant requests for loans from its revolving fund is subject to certain limitations; principal among which is the requirement that the applicant demonstrate that the financial assistance that he requests is not available elsewhere to him on reasonable terms, 15 U.S.C. § 636(a)(1), and the requirement that the loan "be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(7). In most cases, the value of a loan cannot exceed $350,000. 15 U.S.C. § 636(a)(4). As one of the conditions for the granting of a loan, § 2[13] of the Act requires loan applicants to: "(1) certify to the Administration the names of any attorneys, agents, or other persons engaged by or on behalf of ... (the applicant) for the purpose of expediting applications made to the Administration for assistance of any sort, and the fees paid or to be paid to any such persons;". 15 U.S.C. § 642. Section 2[13] also requires the applicant to furnish the names of lending institutions who have refused the loan application. The legislative history of this section suggests that Congress intended these requirements to safeguard the soundness of the the loans, and to ensure that the government would not be competing with the loan programs of private lending institutions. 99 Cong.Rec. 6126, 6127. SBA has issued SBA Form 159 pursuant to the certification procedure mandated by § 2[13] and

**5.** Section 2[2] elsewhere provides:

(a) The essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation. Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed. It is the declared policy of the Congress that the government should aid, counsel, assist, and protect, insofar as is possible, the interests of small business concerns in order to preserve free competitive enterprise, to ensure that a fair proportion of the total purchases and contracts or subcontracts for property and services for

the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation. 15 U.S.C. § 631(a).

**6.** In addition to providing business investment loans, the Act also sets up a disaster loan fund, 15 U.S.C. § 633(c), and provides loans to small business concerns for water pollution control facilities, 15 U.S.C. § 636(g), and to handicapped persons and organizations for the handicapped, 15 U.S.C. § 636(i)-(k). The Act also helps small business concerns to procure government contracts, 15 U.S.C. § 637, and provides financial assistance for research and development programs by small businesses, 15 U.S.C. § 638.

its general authority to issue rules and regulations.

*DISCUSSION.*

■ The APA establishes a presumption that the decisions of federal agencies will be judicially reviewable. The Supreme Court has stated that the "committed to agency discretion" exception of § 10 is to be narrowly construed and employed in those situations where there is "no law to apply". *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). The exception also applies when "a fair appraisal of the entire legislative scheme, including a weighing of the practical and policy implications of reviewability, persuasively indicates that judicial review should be circumscribed." *Local 2855, AFGE, supra; accord, Bullard v. Webster*, 623 F.2d 1042, 1046 (5th Cir. 1980); *Kletschka v. Driver*, 411 F.2d 436, 443 (2d Cir. 1969).

■ The provisions of the Act disclose a legislative framework which grants SBA discretionary authority over a wide range of economic and managerial decisions. For example, SBA's loan granting powers, which are central to the Act, necessarily involve a host of administrative judgments as to the availability of alternative financing from the private sector on reasonable terms, the soundness of the business purpose toward which the requested federal funds will be applied, the underlying stability of the applicant's business, the value of the properties offered as security, and the allocation of specific amounts to successful applicants. Diverse other provisions of the Act also require SBA, in exercising its loan granting powers, to balance such factors as urban/rural allocations, 15 U.S.C. § 636(i)(3), the general income level of the area in which the applicant's business is located, 15 U.S.C. § 636(i)(1), effects on local employment, 15 U.S.C. § 636(i)(7), and economic dislocation due to other federally funded projects, 15 U.S.C. § 636(b). The language of the Act throughout is generally permissive rather than mandatory. *See Ferry v. Udall*, 336 F.2d 706, 712–13 (9th Cir.), *cert. denied*, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). SBA decisions on the granting of a loan or an extension have been found to be nonreviewable by the courts. *See Gifford v. SBA*, 626 F.2d 85 (9th Cir. 1980); *United States v. Capitol Assistance Corp.*, 460 F.2d 256 (9th Cir. 1972), *cert. denied*, 409 U.S. 941, 93 S.Ct. 233, 34 L.Ed.2d 193: *Copake Lake Development Corp.*, 490 F.Supp. 386 (E.D.N.Y. 1980); *Raitport v. SBA*, 380 F.Supp. 1059 (E.D.Pa.1974); *People's Brewing Company v. Kleppe*, 360 F.Supp. 729, 730 (E.D.Wis. 1973).

Thus, the legislative scheme clearly contemplates a broad exercise of discretionary power by SBA. The granting of broad discretionary powers to an administrative agency is not a *per se* commitment of the area to agency discretion so as to preclude judicial review. Such a result would render the traditional standard of review, "abuse of discretion", a nullity.[7] The existence of such a scheme, however, "often suggests that the challenged decision is the product of political, military, economic or managerial choices that are not really susceptible to judicial review." *Local 2855, AFGE, supra*, at 579.

Practical considerations reinforce the conclusion that SBA decisions of what constitutes reasonable fees for loan application packaging services should not be "susceptible to judicial review."

Although the scope and potential quantity of cases should not affect a determination of subject matter jurisdiction, the court may consider such factors in determining the intent of Congress. Neither the language nor the history of the subject statute suggests that Congress intended that the federal courts be involved in determining the amount and reasonableness of fees being charged by packagers. Allowing judicial review would necessarily burden and interfere with normal agency procedures:

---

7. *See United States v. Capitol Assistance Corporation, supra*, at 256; *Ferry v. Udall, supra*, at 711; K. Davis, *Administrative Law Treatise* § 28.16–1 (Supp.1970).

398

the agency would have to formalize its fee review procedures in order to produce a record for review and time and resources would have to be allocated to defend SBA decisions with respect to parties not intended to be the direct beneficiaries of the Act. Thus, SBA attention and energy would be directed away from its prime administrative responsibilities under the Act. *Cf. Chernock v. Gardner*, 360 F.2d 257, 259 (3d Cir. 1966). (Social Security Act intended for the economic benefit of eligible claimants, not for benefit of attorneys claiming fees for assisting in Social Security claims).

■ Permitting judicial review would be equally impractical from the perspective of the efficient allocation of judicial resources. Granting review in the present case would leave every loan packager who disagreed with SBA as to the valuation of his services free to pursue his disagreement in federal court. The loan applicant might also wish to challenge the agency determination if he felt that the approved fee was too high. *See Hahn v. Gottlieb*, 430 F.2d 1243, 1250 (1st Cir. 1970). Moreover, reasonableness of fees is not an essentially legal question in connection with which the learning of judges and lawyers affords special competence. *Local 2855, AFGE, supra*, at 579; *Kendler v. Wirtz*, 388 F.2d 381, 383 (3d Cir. 1968). Rather, SBA is more likely to be familiar with the information required in order to comply with its application procedures and the current value of the accounting and legal services that may be necessary to provide the information. In fact, the decision on fees appears to call for that blend of knowledge and experience that is within the special expertise of an administrative agency. Courts frequently refuse to review administrative decisions relating to the setting of fees or rates. *See, e. g., Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958) (refusal to review toll for Panama Canal set by Panama Canal Co., an instrumentality of the executive branch); *Ayrshire Collieries Corporation v. United States*, 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243 (1949) (refusal to review rates for bituminous coal carriers); *Chernock v. Gardner, supra* (refusal to re-

view attorney's fees in case involving Social Security fees); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296 (2d Cir. 1971); *Feldman v. HUD*, 430 F.Supp. 1324 (E.D.Pa. 1977); *People's Rights Organization v. Bethlehem Association*, 356 F.Supp. 407 (E.D.Pa.1973), *aff'd without opinion*, 487 F.2d 1395 (3d Cir.); *Hahn v. Gottlieb, supra* (refusals to review HUD approvals of rent increases in federally funded public housing).

■ Policy considerations also support nonreviewability. The declared policy of the Act is to strengthen and protect the nation's small businesses. 15 U.S.C. § 631. At the same time, the Act charges SBA with a duty to guard against the dissipation of the public funds that have been set aside to promote the goals of the Act. Regulating the fees that applicants pay for services rendered in connection with the loan applications is consistent with that duty.

Against these considerations, there must be balanced the plaintiff's interests in obtaining review. *Hahn v. Gottlieb, supra*, at 1249. Assuredly, plaintiff has substantial economic interests at stake. Plaintiff claims that each fee reduction has reduced its compensation below the cost to it of the services provided. Moreover, plaintiff alleges that SBA has interfered with its working relationship with area banks. SBA Form 159 provides, however, that all fees are subject to SBA review and approval. Plaintiff does not seriously question SBA's authority to so condition its ability to do business with SBA and has signed several agreements to abide by SBA decisions on fees. However, the court recognizes the unequal bargaining positions of the parties and the practical necessity of plaintiff's acceptance of any and all conditions imposed by the SBA in order to do business with it. Finally, we reiterate that the statute does not have as its primary intent the protection of plaintiff's economic interests. In view of the greater interests of the plaintiffs in those cases where SBA denials of loans and loan extensions have been deemed nonreviewable, it would be anomalous to

grant review of a decision that is peripheral to SBA's primary discretionary powers.

Plaintiff acknowledges the line of cases that suggest judicial reluctance to supervise fees set by an administrative agency, but argues that in each of the cited cases, the agency's fee-setting authority was granted by a specific statutory provision. Thus, in *Chernock v. Gardner, supra,* 42 U.S.C. § 406 gave the administrator the right to set maximum fees for attorneys appearing on behalf of those claiming Social Security benefits. Plaintiff contends that the deference shown in those cases to agency discretion is inapplicable here, where the organic statute grants no such power. Rather, plaintiff urges that SBA has arrogated the fee-setting authority to itself by means of regulations promulgated under the certification requirements of § 2[13] and its general authority to issue rules and regulations. Although plaintiff does not challenge the validity of this assumption of authority by SBA, plaintiff does contend that SBA cannot bring itself within the "committed to agency discretion by law" exception of § 10 of the APA when the "law" is so entirely self-created.

▮ A study of the relevant cases, however, reveals that, although courts have apparently not focused on the issues raised by plaintiff, the "committed by law" exception has been found applicable in circumstances where the agency decision was based on regulations issued pursuant to statutory provisions only slightly less broad than those here involved. For example, in *Local 2855, AFGE, supra,* the 3d Circuit found unreviewable under § 10(a)(2), an Army decision to employ a private contractor to perform stevedoring services at a military ocean terminal that had previously been performed by a local unit of government employees. The Army's action was taken after a comparative cost analysis undertaken pursuant to directives from the Office of Management and Budget (OMB) and various Army and Department of Defense regulations. The regulations limited government reliance on government units to provide commercial services to instances where obtaining the service from a private vendor would result in a significantly higher cost. *Id.* at 577. Statutory authority for these regulations was derived from the government organization provisions of Title 5, which give the heads of executive and military departments general authority to prescribe regulations for the conduct of its business and management of its employees, 5 U.S.C. §§ 301–302 [8] and which also mandate periodic review of the economic efficiency of agency operations and procedures. 5 U.S.C. § 305.[9] *Accord, Bullard v. Webster, supra; Kletschka v. Driver, supra.* In the present case, § 2[13] of the Act expressly gives SBA authority to condition the loans on the applicants' providing the names of those who assisted in the application process *and* the fees charged by such persons for their services. It is difficult to envision a purpose for this provision other than an inferred congressional intent for the agency to use the information to regulate the fees and thereby ensure that the public funds of the loan will be largely directed toward the business purpose for which they were allocated. Thus, the step from statute to regulation is not as bold as plaintiff contends; certainly it is a step

---

**8.** 5 U.S.C. § 301 (1976) provides in pertinent part:

"The head of an Executive department or military department may proscribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."

5 U.S.C. § 302 (1976) gives the heads of department the power to delegate this authority.

**9.** 5 U.S.C. § 305 (1976) provides in pertinent part:

(b) Under the regulations prescribed and administered by the Director of the Bureau of the Budget, each agency shall review systematically the operations of each of its activities, functions, or organization units; on a continuing basis.

(c) The purpose of the review includes

(1) determining the degree of efficiency and economy in the operation of the agency's activities, functions, or organization units;

. . . .

proportionate to those taken by other agencies in other cases where courts have found that a particular decision has been "committed to agency discretion by law". The agency decision having otherwise met the criteria for this exception, therefore, the court sees no reason to disqualify it simply because the discretionary authority whose exercise is at issue was not directly granted by an Act of Congress.

■ The concept of reposing unfettered and unreviewable discretion in a bureaucracy should not be adopted without some trepidation. A judicial pronouncement that such actions by a governmental agency are not reviewable even in the face of an abuse of discretion may beget such abuses. However, there are those areas which are properly submitted to agency discretion and that determination is for Congress and not the courts to make. It should be noted here that this conclusion does not give administrative agencies untrammelled authority to insulate themselves from judicial review by regulatory fiat. In the first place, the question of whether the area of decision has in fact been "committed to agency discretion by law" is always reviewable. Furthermore, even if it is found that the decision does come within the § 10(a)(2) exception, review will be still available on the question of whether the action contravenes an independent constitutional or statutory provision. *Local 2855, AFGE, supra* at 580; *Kletschka v. Driver, supra* at 444. No such violation is found here. Plaintiff's motion for reconsideration is denied, and defendants' motion for summary judgment is granted.