**SUNTEX DAIRY, et al.,**
**Plaintiffs-Appellants,**

v.

**John R. BLOCK, Secretary of Agriculture of the United States,**
**Defendant-Appellee.**

No. 80–2101.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1982.
Rehearing and Rehearing En Banc Denied Feb. 17, 1982.

---

**15.** While the Secretary submitted calculations of the back pay due, the district court made no findings thereon.

Atlas & Hall, Gary Gurwitz, Ballard Bennett, McAllen, Tex., for plaintiffs-appellants.

Raymond W. Fullerton, Terrence G. Jackson, U. S. Dept. of Agriculture, Washington, D. C., M. Angela Flores, Asst. U. S. Atty., Houston, Tex., John H. Sandor, Aaron Baer Kahn, Irene Marietta Solet, Dept. of Agriculture, Washington, D. C., for defendant-appellee.

Sydney Berde, St. Paul, Minn., for amicus Associated Milk Producers.

Before TATE and WILLIAMS, Circuit Judges.*

TATE, Circuit Judge:

The plaintiff milk producers brought this action to challenge an order by the Secretary of Agriculture, which merged six milk marketing orders in Texas into a single new order regulating the former six-market area and additional previously unregulated counties. The district court held that substantial evidence supported the Secretary's determinations that (a) the merged order tends to effectuate the policy of the Act, (b) the failure of the milk handlers to approve the agreement tends to prevent the effectuation of the policy of the Act, and (c) issuance of the order is the only practical means of advancing the interests of the producers in the area. On appeal, the plaintiffs argue that all three determinations were unsupported by substantial evidence, and were arbitrary, capricious, and an abuse of the Secretary's discretion. We find that the Secretary's determination that the merged order tends to effectuate the policy of the Act was supported by substantial evidence, and was not arbitrary, capricious, or an abuse of discretion, and that his further determinations concerning the effect of handler failure to approve the marketing arrangement and the necessity of the order were discretionary acts not subject to review by the courts except for procedural irregularity or fraud. We therefore affirm.

*The Merger of the Texas Milk Marketing Orders*

The federal milk marketing regulation provisions embodied in the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 et seq. ("the Act") and various federal regulations present a highly complex scheme. Its purposes are to establish and maintain orderly marketing conditions for the covered commodities that will result in parity prices to farmers, to protect consumers in approaching the parity prices, to establish and maintain standards for commodities, to insure an orderly flow of the supply of commodities to market, and to avoid the disruption of orderly marketing through continued regulation.[1] Regulation is accomplished, in part, by the issuance of orders by the Secretary of Agriculture ("the Secretary") that establish a uniform minimum price to be paid to "producers" by "handlers," (*i. e.*, those dairy farmers who manufacture raw milk into bottled milk and other products).[2]

The Act provides that the Secretary shall issue a proposed order if, after notice and a hearing, he finds, and sets forth in the order, that the issuance of such order "will

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. 7 U.S.C. § 602.

2. The "labyrinth of federal milk marketing regulation provisions" is described in detail in *Zuber v. Allen*, 396 U.S. 168, 172–87, 90 S.Ct. 314, 317–25, 24 L.Ed.2d 345 (1969), and in our previous decision in this case, *Suntex Dairy v. Bergland*, 591 F.2d 1063 (5th Cir. 1979).

tend to effectuate the declared policy" of the Act.[3]  An order may become effective if it is approved by a requisite proportion of the affected producers,[4] and if at least 50 percent of the affected handlers enter into a marketing agreement.  If, however, the handlers fail or refuse to enter into a marketing agreement, the order may nevertheless become effective if the Secretary determines that lack of handler approval "tends to prevent the effectuation of the declared policy of the Act," [5] that the order is "the only practical means of advancing the interests of the producers," [6] and that the requisite number of affected producers approve the order.[7]  Under the statutory scheme, a hearing is specifically required for the determination as to whether the issuance of the proposed order will tend to effectuate the purposes of the Act (the "tendency" hearing), 7 U.S.C. § 608c(3) and (4); however, the statute does not require an additional hearing for the Secretary's further determinations about refusal of handler approval and about the necessity of the order (the "necessity" determination), 7 U.S.C. § 608c(9)(A) and (B).

Prior to the issuance of the merged order challenged here, Texas was regulated by six separate milk marketing orders.[8]  The plaintiffs are independent milk producers who were regulated under the former Corpus Christi Federal Milk Marketing Order. After a nine-day hearing, the Secretary promulgated a proposed order in which he found, on "the basis of evidence introduced at the hearing and the record thereof" that the issuance of an order that merged the six Texas orders, together with several previously unregulated areas, "will tend to effectuate the declared policy of the Act." [9]  A final order was then issued in which the Secretary determined that:

(1) The refusal or failure of handlers . . . of more than 50 percent of the milk, which is marketed within the Texas marketing area, to sign a proposed marketing agreement, tends to prevent the effectuation of the declared policy of the Act;

(2) The issuance of the Texas order, which amends and merges the aforesaid orders, is the only practical means pursuant to the declared policy of the Act of advancing the interests of producers as defined in the Texas order;

(3) The issuance of the Texas order . . . is approved or favored by at least two-thirds of the producers who participated in a referendum and who during the determined representative period were engaged in the production of milk for sale in the Texas marketing area.[10]

---

**3.**  7 U.S.C. § 608c(3) provides that: "Whenever the Secretary of Agriculture has reason to believe that the issuance of an order will tend to effectuate the declared policy of this chapter . . . he shall give due notice of an opportunity for a hearing upon a proposed order."

  7 U.S.C. § 608c(4) then provides that:

  After such notice and opportunity for hearing, the Secretary of Agriculture shall issue an order if he finds, and sets forth in such order, upon the evidence introduced at such hearing (in addition to such other findings as may be specifically required by this section) that the issuance of such order and all of the terms and conditions thereof will tend to effectuate the declared policy of this chapter with respect to such commodity.

**4.**  The Act provides (with certain modifications not relevant here) that at least two-thirds of the producers engaged in producing the commodity for market within the specified production area, two-thirds of the producers engaged in producing the commodity for sale within the specified marketing area, or the producers who have produced for market at least two-thirds of

the volume of the commodity within either the specified production area or market area, may approve the order.  7 U.S.C. §§ 608c(8)(A) and (B).

**5.**  7 U.S.C. § 608c(9)(A).

**6.**  7 U.S.C. § 608c(9)(B).

**7.**  7 U.S.C. §§ 608c(9)(B)(i) & (ii).  The requisite number of producers is the same as that described in note 4, *supra*.

**8.**  The six previously separate milk marketing orders were:  South Texas, 7 C.F.R. § 1121 (1975);  North Texas, 7 C.F.R. § 1126 (1975); San Antonio, 7 C.F.R. § 1127 (1975);  Central West Texas, 7 C.F.R. § 1128 (1975);  Austin— Waco, 7 C.F.R. § 1129 (1975);  and Corpus Christi, 7 C.F.R. § 1130 (1975).

**9.**  40 Fed.Reg. 20,038 (1975).

**10.**  40 Fed.Reg. 23,438 (1975).

The practical effect of this merged order is that the Corpus Christi producers will receive a lower minimum price for their milk than they received under the separate order that formerly regulated them.

The plaintiffs then brought an action in district court in which they alleged that the merged order was invalid because it was not supported by substantial evidence.[11] The district court held that the plaintiffs lacked standing to challenge the substantive merits of the milk marketing order. We reversed and remanded, *Suntex Dairy v. Bergland*, 591 F.2d 1063 (5th Cir. 1979). On remand, the district court found that all determinations by the Secretary were supported by substantial evidence, which ruling is the subject of the present appeal.

*The Secretary's Determination that the Merged Order Tends to Effectuate the Policy of the Act*

The plaintiffs contend first that the Secretary's determination that the merged order would tend to effectuate the purposes of the Act was unsupported by substantial evidence and was arbitrary, capricious, and an abuse of discretion.[12] We find this contention without merit.

■ Our inquiry into the Secretary's decision that the merged order tends to effectuate the policy of the Act is limited, as in the case of judicial review of other agency decisions involving an adjudicatory hearing, to determining whether the agency's findings and conclusions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). *See, e. g., Refrigerated Transport Co., Inc. v. I.C.C.*, 616 F.2d 748, 751 (5th Cir. 1980).

The "arbitrary and capricious" standard is narrow and permits a reviewing court merely to consider whether the agency decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The "substantial evidence" standard requires a determination that agency findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). If the evidence of record is such that it supports inconsistent inferences and conclusions, the courts must defer to administrative choice. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.*, 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966). The Secretary's decision that the proposed order tended to effectuate the policy of the Act clearly survives judicial review under both the "arbitrary and capricious" standard and the "substantial evidence" standard.

■ After notice and a hearing required under 7 U.S.C. § 608c(3) were provided, the Secretary found that although the six orders were distinguishable when originally promulgated, "changes in marketing practice since that time . . . have caused these separately regulated areas to become substantially interrelated in both the distribution and procurement of milk."[13] There was abundant evidence presented at the hearing from which the Secretary could conclude that the former six-market area was characterized by intermarket competition in distribution, common production ar-

---

11. The plaintiffs also argued that a dairy cooperative, Associated Milk Producers, Inc., which has filed a brief as *amicus curiae* in the present case, violated a Missouri district court antitrust injunction by bloc voting during the referendum to get producer support for the order. In *Suntex*, we held that although the bloc voting may have violated the terms of the district court injunction, "[t]he appropriate response . . . is a matter for the Missouri district court under that court's continuing jurisdiction to enforce or protect its injunction order." 591 F.2d at 1068.

12. These are two of the standards of review contained in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A and E). For a recent discussion of judicial review of agency action, see Pierce & Shapiro, Political and Judicial Review of Agency Action, 60 Tex.L.Rev. —— (1981).

13. 40 Fed.Reg. 20,005 (1975).

eas, and common reserve supply.[14] In addition, the evidence also revealed that producers supplying the six-market area received different levels of payment for their milk.[15] The plaintiffs' contention that no significant interrelationship existed between it and the other merged markets was examined in depth by the Secretary, and was rejected.[16]

*The Secretary's Determinations Concerning Handler Failure to Sign a Marketing Agreement, and the Necessity of the Order*

■ The plaintiffs' second argument is more difficult and presents this court with an issue of first-impression statutory interpretation. After the Secretary had held the hearing pursuant to 7 U.S.C. § 608c(3), and the applicable rules of practice and procedure, 7 C.F.R. § 900 *et seq.* (1975), he subsequently issued a determination that "[t]he refusal or failure of the handlers ... of more than 50 percent of the milk ... marketed within the Texas marketing area, to sign a proposed marketing agreement, tends to prevent an effectuation of the declared policy of the Act" and that the issuance of the order was "the only practical means pursuant to the declared policy of the Act of advancing the interests of producers as defined in the Texas order." 40 Fed.Reg. 23,438 (1975). In addition, the Secretary found that the order was approved by the requisite number of producers, *see id.*, and accordingly, he issued the new order.

The plaintiffs argue that, even assuming that there was substantial evidence to support the Secretary's decision that the merged order tends to effectuate the declared policy of the Act, his further determinations that, in regard to the former Corpus Christi order, the absence of handler approval tended to prevent effectuation of the policy of the Act, and the only practical means of advancing the policy of the Act was to issue the producer-approved order,

were unsupported by substantial evidence, as well as arbitrary, capricious, and an abuse of discretion.

We ultimately find, for reasons below set forth, that these determinations made by the Secretary were entrusted to his discretion and required no further factual showing beyond the findings in the initial "tendency" hearing that the order tended to effectuate the purposes of the Act.

■ The Administrative Procedure Act, 5 U.S.C. § 702, provides that "A person suffering legal wrong because of agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Nevertheless, 5 U.S.C. § 701(a) states specifically that the provisions of the APA dealing with judicial review do not apply when: "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Although there is no explicit preclusion of judicial review in the statute under discussion here, "an agency action is committed to the agency's discretion and is not reviewable when an evaluation of the legislative scheme as well as the practical and policy implications demonstrate that review should not be allowed." *Bullard v. Webster*, 623 F.2d 1042, 1046 (5th Cir. 1980), *cert. denied*, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), citing *Local 2855 v. United States*, 602 F.2d 574 (3d Cir. 1979).

■ We are aware that the "committed to agency discretion" exception, 5 U.S.C. § 701(a), of the APA is "very narrow". *Citizens to Preserve Overton Park, supra*, 401 U.S. at 410, 91 S.Ct. at 820 (1971). Access to judicial review should be restricted "[o]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent" to do so. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Citizens to Preserve Overton Park, supra*, 401 U.S. at 410, 91 S.Ct. at 820.[17] The courts have

14. *See id.* at 20,005–007.

15. *Id.* at 20,005.

16. *Id.* at 20,006–007.

17. For a discussion of the "committed to agency discretion" exception to the general rule that

historically limited the exception to cases where: (1) the statute in question is "drawn in such broad terms that in a given case there is no law to apply, [and] courts ... have no statutory question to review." S.Rep.No.752, 79th Cong., 1st Sess., 26 (1945) (on Administrative Procedure Act); *Citizens to Preserve Overton Park, supra,* 401 U.S. at 410, 91 S.Ct. at 821; *Santa Clara v. Andrus,* 572 F.2d 660, 666–67 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978); (2) the courts are simply "ill-equipped" through a lack of expertise to review the decision in question, *Hahn v. Gottlieb,* 430 F.2d 1243, 1249 (1st Cir. 1970); *Kletschka v. Driver,* 411 F.2d 436, 443 (2d Cir. 1969); and (3) the agency action involves decisions relating to areas, such as national defense, that "lie outside sound judicial domain in terms of aptitude, facilities, and responsibility." *Curran v. Laird,* 420 F.2d 122, 129 (D.C.Cir.1969).[18]

In "weighing of the need for, and the feasibility of, judicial review versus the potential for disruption of the administrative process," *Bullard, supra,* 623 F.2d at 1046, it is apparent to us that the determinations in question could not be subjected to any meaningful judicial review. After the Secretary holds the "tendency" hearing provided by 7 U.S.C. § 608c(3) and determines that the order tends to effectuate the policy of the Act, he must then determine whether, if the requisite number of handlers fail to approve the agreement, that failure tends to prevent the effectuation of the policy of the Act. Given that the Secretary has already made a determination, after notice and a hearing, that the order tends to effectuate the policy of the Act, it follows that failure by the handlers to approve such a marketing arrangement *prevents* effectuation of the policy of the Act. Judicial review of this determination could add nothing to the judicial review of the hearing provided by 7 U.S.C. § 608c(4), and such review would be duplicative and inefficient.

Although analysis of plaintiffs' claim with respect to the Secretary's determination that issuance of the order is the only practical means of advancing the interests of the producers is more difficult, it nevertheless yields the conclusion that this determination is also not subject to our review.

■ In deciding whether the Secretary's determination is "committed to agency discretion by law" the test " 'is not whether a statute viewed in the abstract lacks law to be applied, but rather, whether *'in a given case'* there is no law to be applied.' " *Andrus, supra,* 572 F.2d at 666, quoting *Strickland v. Morton,* 519 F.2d 467, 470 (9th Cir. 1975) (emphasis in original).

The scope of discretion accorded to the Secretary under the statutory scheme is such that 7 U.S.C. § 608c(9)(B) imposes no "limits [on the] agency's discretion to act in the manner which is challenged." *Andrus, supra,* 572 F.2d at 666. The Secretary must make a factual determination after the hearing about the tendency of the order to serve the purposes of the Act. In that situation, the Secretary's discretion is limited by his lawful consideration of the evidence that is presented at the "tendency" hearing under 7 U.S.C. § 608c(3). Under 7 U.S.C. § 608c(9)(B), however, the Secretary is directed to determine, *without the development of an additional evidentiary record,* the necessity of the proposed order. The statute imposes rigorous obligations on the Secretary to develop an evidentiary record with respect to the "tendency" aspect of the order, but leaves him to make a determination of its "necessity" aspect without any further evidence to be taken. The most sensible construction of the statutory scheme, under these circumstances, is that the Secretary's determination for the "ne-

agency decisions are amenable to judicial review, see Berger, *Administrative Arbitrariness: A Synthesis,* 78 Yale L.J. 965 (1969); Berger, *Administrative Arbitrariness: A Sequel,* 51 Minn.L.Rev. 601 (1967); Davis, *Administrative Arbitrariness is Not Always Reviewable,* 51 Minn.L.Rev. 643 (1967), Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv.L.Rev. 367 (1968). *See also* L. Jaffe, Judicial Control of Administrative Action 353–76 (1965).

18. *See generally* Pierce & Shapiro, *supra,* note 12.

cessity" of the order—once the evidentiary "tendency" hearing establishes the Secretary's statutory authorization to issue it—is left to his administrative decision whether or not to issue it as "the only practical means of advancing the interests of the producers . . . pursuant to the declared policy [of the Act]", 7 U.S.C. § 608c(9)(B). We are reinforced in our view that this is the proper interpretation of the statutory provisions, because the Act has been so administratively construed and administered (albeit without issue being raised, until now) since its enactment. *See, e. g., United States v. Rock Royal Co-Op., Inc.,* 307 U.S. 533, 547, 59 S.Ct. 993, 1001, 83 L.Ed. 1446 (1939); *H. P. Hood & Sons, Inc. v. United States,* 307 U.S. 588, 592, 59 S.Ct. 1019, 1022, 83 L.Ed. 1478 (1939).

Further, although the courts may be equipped to determine whether the Secretary's "tendency" determination is supported by substantial evidence, it is clear that we are ill-equipped to examine the Secretary's "necessity" determination in the absence of any *additional* factual evidence or findings, the making of which the Act does not envisage. If we were to hold that the Secretary's "necessity" determination were reviewable, it would imply that if the Secretary decided *not* to issue the order, then that decision would likewise be reviewable. That would put the federal courts in the position of possibly requiring that the Secretary issue an order that he has determined was not necessary to effectuate the purposes of the Act.

On oral agument the Court was informed that never in the history of the Act have the handlers voted to approve a marketing arrangement. Thus, the additional finding of necessity has always followed as a matter of course without further hearing or findings. It would alter the established practice of over forty years under the Federal Milk Marketing Act to discover now a separate judicial review of the "necessity" finding of the Secretary. Thus, the logic of the finding of "necessity" being based upon the "tendency" hearing coalesces with the entrenched practice to establish that the "necessity" determination by the Secretary is discretionary administrative action.

Our conclusion of non-reviewability is supported by two additional considerations.

*First,* the statutory scheme of the Act and its limited judicial interpretations clearly define the ambit of federal court participation in the issuance of milk orders. 7 U.S.C. § 608c(15)(A) provides:

> Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom . . . .

> After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, in accordance with law.

7 U.S.C. § 608c(15)(B) then provides for review in the district court of the ruling issued by the Secretary.

The judicial review provided by 7 U.S.C. § 608c(15)(A) has been interpreted in two primary cases. In *United States v. Rock Royal Co.-Op., Inc.,* 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939), the Supreme Court accorded handlers standing to raise by way of defense issues of want of statutory authority to impose certain provisions that were alleged to discriminate against particular handlers. In *Stark v. Wickard,* 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944), producers were permitted to challenge the Secretary's deduction from a fund used to insure that the minimum price established by an order accurately reflected the actual use to which handlers put their purchased milk. *Stark* was explicit in its holding that judicial review beyond that authorized by the statute is justified only when the issue is the Secretary's statutory authority for a particular action. *Id.* at 307, 64 S.Ct. at 570.

In the present case, however, the plaintiffs do not allege that the Secretary's determinations (that lack of handler approval tends to prevent effectuation of the Act, and that issuance of the order was neces-

sary to advance the interests of the producers) are beyond the authority of the Secretary. Rather, the plaintiffs object to the *manner* in which the determinations were made. We have previously found no procedural irregularity in the manner in which the determinations were made, and our review function there ends so far as to the issues raised by this appeal.

We do not intimate that the producers have no ability to get substantive review of the merits of the Secretary's determination. The Act's provision for review was interpreted also in our earlier decision in *Suntex Dairy v. Bergland*, 591 F.2d 1063 (5th Cir. 1979), to accord standing to producers to request a substantive review of the merits of the Secretary's decision in his Section 8c(4) "tendency" determination. The plaintiffs may, of course, also challenge the "necessity" determination to the extent that "the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influence, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command." *Local 2855, supra*, 602 F.2d at 580.[19]

*Second*, even if we were to hold that the "necessity" determination was reviewable, it would have to be reviewed under the "arbitrary, capricious or abuse of discretion" standard of 5 U.S.C. § 706(2)(A). The inappropriateness of judicial review may be seen by examining to *what* we would apply this standard of review. In determining whether agency action is arbitrary and capricious, judicial review may focus only on the factors considered and the existence of an obvious error in judgment. The statutory scheme provides the Secretary with no further factors to consider after he has already conducted a full hearing and determined that the order tends to effectuate the policy of the Act. With respect to determining whether there has been an error in the Secretary's judgment to issue a particular order, we consider the Byzantine nature of milk marketing regulation and we "willingly confess our incapacity to contribute intelligently to the general course of decision" on federal milk marketing orders. *Hahn, supra*, 430 F.2d at 1249. On the basis of findings supported by substantial evidence that the order would tend to effectuate the purposes of the Act—and considering that the statutory scheme contemplates no further evidentiary hearing—we are unable to say that the judiciary could gainsay the Secretary's determination that the issuance of the order was the only practical means to effectuate the purposes of the Act when he finds that the requisite number of handlers have failed to enter into a voluntary agreement under 7 U.S.C. § 608c(8).

The plaintiffs argue that the standard of review for the "necessity" determination should be "substantial evidence." However, "[r]eview under the substantial evidence test is authorized only when the agency action is taken pursuant to a rule-

---

**19.** The plaintiffs argue that *Suntex* requires judicial review of the Secretary's "necessity" determination, but such a reading would result in the producers having greater access to review than that explicitly provided by the Act. Rather, *Suntex* holds only that producers have standing to challenge the Secretary's order on its substantive merits; contrary to the plaintiffs' suggestion, *Suntex* did not provide a standard for the substantive review that the producers were given standing to request.

As described in Suntex I, the issue concerned whether the present milk producers had standing to attack the Secretary's statewide milk marketing order as "invalid because not supported by substantial evidence," 591 F.2d at 1064, (and also because of bloc voting by the Associated Dairy Cooperative—but this contention of the producers was rejected, see part III of opinion, *id.* at 1067–68, and *see* note 11,

*supra*). The issue was whether the milk producers had "standing to seek judicial review on the *substantive* merits of the Secretary's determination that a new Texas-wide order should be promulgated." *Id.* at 1065 (emphasis supplied). In finding standing in the producers for judicial review of the "substantive legality of orders promulgated pursuant to the [Act]," Id. at 1065–66, we relied upon such factors as that " 'where as here the issue is the statutory power to make the deductions required by Order . . . , a mere hearing or opportunity to vote cannot protect minority producers against unlawful exactions which might be voted upon them by majorities.' " *Id.* at 1066, see also 1067. The issue with which we are presently concerned (the Secretary's "necessity" determinations) was not before the appellate court or considered by it in *Suntex I.*

making provision of the [APA] ... or when the agency action is based on a public adjudicatory hearing." *Citizens to Preserve Overton Park, supra,* 401 U.S. at 414, 91 S.Ct. at 822–23. The present Act is explicit in requiring notice and a hearing for the "tendency" determination under Sections 8c(3) and 8c(4), to effectuate the declared policy of the Act, but it does not require the Secretary to hold an additional hearing to make the further determinations that handler approval is absent, that lack of handler approval tends to prevent effectuation of the Act, and that issuance of the proposed order is the only way to effectuate the purposes of the Act.[20]

*Conclusion*

We find that the Secretary's determination that the order tended to effectuate the policy of the Act was supported by substantial evidence and was not arbitrary, capricious, or an abuse of discretion. We also find that the Secretary's further determinations that lack of handler approval tended to prevent effectuation of the Act, and that issuance of the producer approved order was the only practical means of advancing the interests of the producers, were agency actions entrusted to his discretion and not reviewable by the courts except for procedural irregularity or fraud. Accordingly, we AFFIRM the decision of the trial court.

AFFIRMED.

**20.** The plaintiffs are vague in their argument about the standard of review that should be used, and one reading of their contention that the "substantial evidence" standard is proper is that the "necessity" determination should be made in the context of some type of hearing.

The hearing that the plaintiff apparently desires must occur either in the context of the "tendency" hearing provided by 7 U.S.C. § 608c(3), to determine whether the proposed order will tend to effectuate the policy of the Act, or must be a separate subsequent hearing to determine whether the issuance of the order is necessary to effectuate the purposes of the Act.

With respect to a secondary hearing "within" the "tendency" hearing provided by 7 U.S.C. § 608c(3), the plain language of Section 8c(4) requires only that the Secretary determine that the issuance of the order will tend to effectuate

the policy of the Act. It would be difficult, and at the very least extremely inefficient, to require that the Secretary made a determination about producer approval, lack of handler approval, and the *necessity* of the order in the context of the prior ("tendency") hearing designed to determine the tendency of the order to effectuate the policy of the Act.

If the plaintiffs intend by their argument to suggest that there should be a separate hearing subsequent to the "tendency" hearing, we reiterate that, although the Act is explicit in requiring notice and on hearing under section 7 U.S.C. § 608c(3), it is completely silent about the development of an evidentiary record in the context of the Secretary's determination concerning the necessity of the order.