Orville **FREEMAN**, U. S. Secretary of
Agriculture, Appellant,

v.

**HYGEIA DAIRY COMPANY**, Appellee.

No. 19811.

United States Court of Appeals
Fifth Circuit.

Jan. 10, 1964.

Alan S. Rosenthal, Pauline B. Heller,
Attys., Dept. of Justice, Washington, D.
C., Homero M. Lopez, Asst. U. S. Atty.,

Brownsville, Tex., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Woodrow Seals, U. S. Atty., for appellant.

James R. Sloan, Austin, Tex., Lorimer Brown, Harlingen, Tex., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and SIMPSON, District Judge.

SIMPSON, District Judge.

This is an appeal by the appellant, the Secretary of Agriculture, from the District Court's ruling that his amended Order No. 98, as promulgated on August 14, 1957, was not issued in accordance with law. Specifically, the lower court held on a petition filed by Hygeia Dairy Company, a milk handler,[1] that the Secretary failed to properly conduct the referendum for producers' approval of this amended Order No. 98. Under Title 7 U.S.C. § 601 et seq., the Secretary is authorized to issue regional marketing orders, each order being specially adapted to the conditions of the area in which it is to be effective.[2]

Existing at the time this amended order No. 98 was promulgated, there was a regulated area known as the Corpus Christi Marketing Area which comprised seven (7) counties.[3] This was under the original Order No. 98 which was promulgated on May 25, 1955. Under Title 7 U.S.C. §§ 608c(1) and 608c(3), the Secretary is empowered to issue and, if necessary, amend orders applicable to processors, producers, and others engaged in the handling of any agricultural commodity or product specified in § 608c(2). It is his duty to issue or amend an order whenever he has reason to believe such an order will tend to effectuate the declared policy of the Act. He is required to give due notice of and an opportunity for a hearing upon a proposed order.

Pursuant to a notice of hearing issued November 20, 1956, a hearing was held to decide on a proposed order to include the counties of Cameron and Hidalgo within the then existing Corpus Christi Marketing Area.[4] The Secretary directed that a referendum be conducted among producers who, during a representative period were engaged in the production for market of milk covered in the order, which meant the nine counties which would be covered by the amended order. § 608c(5) (B) (i) provides that in the case of milk and its products no order or provision shall be issued unless approved or favored by at least three-fourths of the producers who, during a representative period determined by the Secretary

---

1. A handler is defined as the operator of an approved plant. 20 F.R. 3788, Sec. 998.10.

2. In connection with regulating the market for milk and its products, the basic function of the orders is to establish minimum prices for handlers to pay for milk according to its use, and to assure the payment of uniform minimum prices to producers by regulated handlers.

3. These counties are Brooks, Duval, Jim Wells, Kleberg, Live Oak, Nueces, and San Patricio.

4. The Secretary found, inter alia, that the evidence adduced at the hearing demonstrated that the marketing area should be extended to include Cameron and Hidalgo counties. He found that a large proportion of milk sold in Cameron and Hidalgo counties was sold by persons who were handlers under Order No. 98; that some producers were supplying milk to the old marketing area as well as to Cameron and Hidalgo; and that unregulated handlers distributing milk in Cameron and Hidalgo counties were a potential threat to those under regulation and to the stability of the marketing area. He also found that location differentials, such as were contemplated and provided for by the Act, were warranted in the Order 98 marketing area. This determination was based on an analysis of the historical pricing patterns in the Rio Grande Valley (including Cameron and Hidalgo counties); the relationship between milk prices in North Texas and those in Corpus Christi and the Valley; the cost of transporting milk to the Valley counties which are a deficit area from the standpoint of local supply; and the changes which had occurred between the promulgation of the original order and the 1957 amendments, including a drop in the prices paid to producers in the Valley with a resulting disadvantage to those producers and to handlers in the Corpus Christi area who distributed milk in the Valley.

of Agriculture, have been engaged in the production for market of milk covered in such order or by producers who, during such representative period, have produced at least three-fourths of the volume of such milk produced for market during such period. With respect to producers' approval in the instant case, the referendum resulted in a favorable vote by a number substantially more than the required percentage.

Hygeia, after exhausting all administrative remedies, brought this action under § 608c(15) (B) to review the administrative determination of the Secretary dismissing its attack on this amended order. The appellee-Hygeia has asserted numerous errors and irregularities in the amended order and the procedure followed by the Secretary in conducting the referendum. This latter point is the sole question before us, since it is all that the lower court's judgment rests on. Appellee successfully contended below that in lieu of one referendum for the producers of the nine counties to be regulated by the amended order No. 98, the Secretary should have conducted two separate ones. That is, one for the producers who were already under Order No. 98 and another for the producers of Cameron and Hidalgo counties. In sustaining this view and holding that the referendum was invalid, the district judge was of the opinion that those producers, who were already regulated, were able to exert their will against the producers in the new area sought to be added. None of the other alleged errors were considered by the court below. Since in remanding to the Secretary, the judge stated that his decision on this point disposed of the case, it is not necessary for us to go into any of the other alleged errors which Hygeia asserted below.

The Secretary now seeks a reversal on either or both of the following grounds:

(1) That the producer referendum was valid and complied with all statutory requirements;

(2) That appellee as a milk handler lacks standing to attack the Secretary's procedure for conducting a producers' referendum.

The background and legislative history of this legislation leaves no doubt that Congress gave the Secretary broad discretion in its administration. United States v. Rock Royal Co-op, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Queensboro Farms Products v. Wickard, 2 Cir., 137 F.2d 969.

Section 8c(19) (Title 7 U.S.C. § 608c(19)), provides that in ascertaining whether the issuance of an order is approved by the requisite number of producers, the Secretary may conduct a producers' referendum. Since such a referendum is within his discretion, he might ascertain whether the required percentage has been met in any way he deems appropriate. It must necessarily follow from the complexities of administration of §§ 601 et seq. that the details of a referendum, and the manner in which it is conducted, must be left exclusively in the hands of the Secretary.

Any judicial review of an order which the Secretary has promulgated is limited to a review of the record from the administrative proceedings and to determination whether such order was issued in accordance with law. Wawa Dairy Farms v. Wickard, 3 Cir., 149 F.2d 860. That is, if the court should find upon a review of the Secretary's ruling that it was supported by substantial evidence,[5] and if the statutory requirements

---

5. The district judge disposed of the case by summary judgment upon the question of the validity of the referendum only, saying, in its Memorandum Opinion: "The Court feels that a decision on the first general point of attack will dispose of the case." As to Hygeia's second point of attack, the price differential, he observed:

"On the second general point of attack on the order, the price differential, made by Hygeia, it is sufficient to state that the mere fact that a price differential had to be established between milk delivered in Cameron and Hidalgo Counties, and milk delivered in Corpus Christi, Texas, seems reason enough to

were met, then the order must be said to have been issued in accordance with law.

There are several statutory requirements which the Secretary must follow. They pertain to notice of a hearing and opportunity to be heard at the hearing; advertising by radio and local newspapers stating when the ballots shall be sent to the producers and designating the day that they are to vote; and also a required percentage of producers voting for approval. All of these requirements were met and there is no attack made as to them. There are no provisions for conducting a referendum, other than the section which allows the Secretary to hold one. In H. P. Hood & Sons v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478, the United States Supreme Court said:

> "The Act does not supply the Secretary with detailed directions as to the manner of holding a referendum. Its language is general. The Secretary 'may conduct a referendum among producers.' What producers? Those engaged in the production of milk for sale in the marketing area."

In the case of Mosey v. Benson, Secretary of Agriculture, (U.S.D.C., S.D. Miss., decided September 11, 1958, unreported) the identical problem was presented. There the Secretary conducted a producer's referendum for the purpose of enlarging an existing marketing area. Producers in both the existing area and in the proposed counties to be included were allowed to vote in one referendum. The Court, in citing Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719, stated:

> "In that case it was also held that the referendum was properly submitted to the voters in the original area, as well as in the area to be affected by the amendment."

■ Since the manner in which such a referendum is conducted is neither subject to attack by a handler or producer nor subject to judicial review, the Court's order holding the referendum invalid as not done in accordance with law, cannot stand.

The Secretary's second contention on appeal is that the appellee-Hygeia has no standing to sue. In his reply brief the Secretary cites the recent case of Calhoun v. Freeman, 114 U.S.App.D.C. 385, 316 F.2d 386, from the District of Columbia. In that case several producer-handlers, suing in their capacity as producers, attacked an order of the Secretary claiming that the Secretary had failed to treat them as producers under the Boston Milk Marketing Order of 1961. The District Court granted the Secretary's motion for summary judgment on the ground that the producers had no standing to sue, and this was affirmed. But it does not follow, as the Secretary would have us decide, that the handlers, likewise, have no standing to sue. Sec. 8c(15) (A) under Title 7 U.S.C. § 608c(15) (A) expressly provides that any handler subject to an order may file a petition with the Secretary of Agriculture stating that any such order or any provision of such order or any obligation imposed in connection therewith is not in accordance with law.

■■ It is apparent from the plain meaning of this section that all that is required is that a handler be subject to such an order. Here Hygeia is a milk handler, who produces milk within the area regulated by Amended Order No. 98. Therefore, this order, as it establishes certain uniform minimum prices, does apply to Hygeia. It would also appear that if a handler was subject to an order, then one or more **of its** provisions and/or obligations must apply to the handler. The statute does not require

---

have upheld the Hearing Examiner's finding that the Secretary had 'failed to show that evidence exists which would justify the inclusion of Cameron and Hidalgo Counties in the Corpus Christi Marketing Area.' "

This appears to be dictum only, or at most the expression of a tentative view. We express no opinion as to the point. The District Court should examine it, make appropriate findings, and decide it upon remand.

that the handler must be adversely affected by such an order, but rather that it be subject to the order. The handlers' right to attack an order should not be confused with the decision that the referendum procedure is not subject to attack or judicial review. Hygeia, in its petition complained of numerous alleged errors besides the manner in which the referendum was conducted. Inasmuch as Hygeia does have standing to complain, these several points which were not decided by the District Court can be determined on remand.

The judgment of the District Court is reversed for further proceedings not inconsistent herewith.

Reversed and remanded.