CONSOLIDATED–TOMOKA LAND COM-
PANY et al., Plaintiffs-Appellees,

v.

Earl L. BUTZ, as Secretary of the United
States Department of Agriculture,
Etc., et al., Defendants-Appellants.

No. 73–1173.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1974.

**1209**

John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., Fred Harris, Jr., Regional Atty., U. S. Dept. of Agriculture, Atlanta, Ga., Michael Kimmel, Dept. of Justice, Wash., D. C., William Mount, Gen'l Litigation Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Walter H. Fleischer, Dept. of Justice, Washington, D. C., for defendants-appellants.

Charles E. Davis, Orlando, Fla., for plaintiffs-appellees.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from an order entered by Judge Gerald B. Tjoflat granting the plaintiffs' motion for summary judgment, declaring a producers' referendum conducted under the Agricultural Marketing Act of 1937, as amended, 7 U.S.C. § 608c, invalid, because it was not conducted in accordance with the provisions of that Act and the regulations issued by the Department of Agriculture implementing it. The district court enjoined the defendants from enforcing the marketing order submitted in the referendum to the producers. In a well-considered opinion accompanying his judgment, Judge Tjoflat concluded that Seald-Sweet Growers, Inc., a cooperative association under Florida law that cast 1474 of the 4164 votes cast in the referendum, "is not a 'cooperative association of producers' within the meaning of the . . . Act and the regulations thereunder and, therefore, was not entitled to cast a ballot in the referendum". The court held, "as an alternate ground for disqualifying Seald-Sweet's ballot, that Seald-Sweet improperly permitted its board members from the Indian River District [a district not included within the territory governed by the proposed marketing order] to participate in the decision to cast the ballot approving the marketing order". Consolidated-Tomoka Land Co. v. Butz, M.D.Fla.1972, 353 F. Supp. 683, 688. Judge Tjoflat further concluded that, "[s]ince the official ballots used in the referendum do not contain sufficient information to distinguish between [the] producers of covered and uncovered [i. e., 'exempt' fruit, not entering the fresh fruit market intended to be regulated by the proposed marketing order] fruit, there is no way of determining whether two-thirds of the producers engaged in the production of the commodity covered in the order approved its issuance" as the Marketing Act now requires. *Id.* at 690. We adopt the district court's opinion as the opinion of this Court.

A few words, perhaps, should be said on two points Judge Tjoflat may have thought so obvious as not to merit discussion in his opinion. The Secretary has argued in this Court that the plaintiffs have no standing to seek judicial review of the procedure by which the marketing order in question was adopted. As the Supreme Court noted in Barlow v. Collins, 1970, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192, 199, "preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. [Citations omitted.] Indeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated. In Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, [686,] we held that 'judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.'" As we view the Agricultural Marketing Act, Congress intended not to foreclose judicial review at the instance of producers such as the plaintiffs, but, on the contrary, intended, through the device of a validly conducted referendum, to give decisive weight to their views. The Act,

7 U.S.C. § 608c(8), provides that no marketing order shall be effective unless the Secretary determines that the issuance of the order is approved either by two-thirds of the producers of the commodity proposed to be regulated by the order in the production area specified in the order, or by producers who have produced for market "at least two-thirds of the volume of such commodity produced for market within the production area". In light of this deference the statute itself pays to the interests of producers, it is clear that those interests are "arguably within the zone of interests to be protected or regulated by the statute . . . in question", and hence meet the test for standing to secure judicial review set forth in Association of Data Processing Service Organizations, Inc. v. Camp, 1970, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188. It is true, as the Government notes, that 7 U.S.C. § 608c(15) establishes a procedure for "handlers" to challenge, first by petition to the Secretary, and then in the district courts, an order or "any obligation imposed in connection therewith" on the grounds that the order or obligation "is not in accordance with law and praying for a modification thereof or to be exempted therefrom." But we cannot accept the Government's argument that this provision of judicial review for handlers affected by the administrative action and seeking one kind of relief precludes an action by *producers* challenging primarily not the order, but the procedure by which it was promulgated. Preclusion of judicial review must be founded on a ground more firm than *expressio unius exclusio alterius*.

This observation leads us to the Government's second point not dealt with explicitly in the district court's opinion. The Government urges that our decision must be controlled by the following language of Freeman v. Hygeia Dairy Co., 5 Cir. 1964, 326 F.2d 271, 273:

It must necessarily follow from the complexities of administration of §§ 601 et seq. that the details of a referendum, and the manner in which it is conducted, must be left exclusively in the hands of the Secretary.

The Government neglected to put this statement in context by quoting the two sentences immediately preceding it and the one following:

Section 8c(19) . . . provides that in ascertaining whether the issuance of an order is approved by the requisite number of producers, the Secretary *may* conduct a producers' referendum. Since such a referendum is *within his discretion,* he might ascertain whether the required percentage has been met in any way he deems appropriate. . . .

Any judicial review of an order which the Secretary has promulgated is limited to a review of the record from the administrative proceedings *and to determination whether such order was issued in accordance with law. Id.* (Emphasis supplied.)

■ After the events involved in the *Hygeia* case had transpired, Congress amended the Agricultural Marketing Act of 1937 to require producers' referenda to approve marketing orders of the kind involved in the present case, to set forth the percentage of the vote required for approval, and to specify the content of the ballots and other particulars. *See* 75 Stat. 304 (§ 141(4)) (1961), codified at 7 U.S.C. § 608c(19). From the language of *Hygeia* quoted above, it follows, now that Congress has made the conduct of a referendum mandatory rather than discretionary with the Secretary, that these plaintiffs have standing to seek a judicial "determination whether such [marketing] order was issued in accordance with law."

The judgment of the district court must therefore be affirmed.