**SEQUOIA ORANGE CO.,**
**Plaintiff–Appellee,**

v.

**Clayton YEUTTER, Defendant–Appellant.**

**No. 91–15241.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1992.
Decided Aug. 21, 1992.

Michael E. Robinson, Dept. of Justice, Washington, D.C., for defendant-appellant.

James A. Moody, Washington, D.C., and Brian C. Leighton, Fresno, Cal., for plaintiff-appellee.

Before: FLETCHER, POOLE, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

The Secretary of Agriculture appeals the district court's decision to invalidate amendments to a marketing order because the Secretary did not comply with the Administrative Procedure Act. We affirm.

## FACTS

Under the Agricultural Marketing Agreement Act ("AMAA") the Secretary of Agriculture has authority to implement marketing orders regulating the sale and delivery of certain agricultural products. 7 U.S.C. § 601 et seq. Since 1954 the Secretary has enforced marketing orders for the sale of Valencia oranges (and navel oranges) in Arizona and California. Part of the order imposes a quota on the number of oranges producers of Valencia oranges ("growers") may sell each week. The regulatory scheme under the AMAA requires that amendments to the order be favored by at least 75% of the growers or by growers producing at least two-thirds of the total volume of oranges. 7 U.S.C. § 608c(8)–(9).

In March of 1983, the agency responsible for administering the AMAA announced that it was considering amending the Valencia Marketing Order.[1] 48 Fed.Reg. 11276 (March 17, 1983). The AMAA specifically requires a notice and hearing before considering marketing orders. 7 U.S.C. § 608c(3). A notice was published in the Federal Register. The notice included all the proposals to be considered, called the action a "Public hearing on proposed rulemaking," and stated that "[t]his administrative action is governed by the provisions of" the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 556, 557. 48 Fed. Reg. at 11276–77. Written comments were received on the proposed amendments, including several that took positions on how the proposals should be voted on in the referendum.

On July 18, 1984, the Secretary issued a proposed rule, suggesting many amendments to the order. According to the Secretary's brief, "In an effort to ensure that all the amendments were adopted, the Secretary ordered that the referendum would provide for a vote on the entire order as amended. Thus, a vote against the referendum would lead to a termination of the entire order and complete deregulation of the orange industry." The published notice stated that "[t]he referendum ballot shall provide only for the approval or disapproval of the orders as amended and as hereby proposed to be amended." 49 Fed. Reg. 29071, 29088 (July 18, 1984). The notice included a "tendency finding" required by the AMAA, 7 U.S.C. § 608c(4), that "said order, as amended and as *hereby* further amended, ... will tend to effectuate the declared policy of the act." 49 Fed.Reg. at 29088 (emphasis added).

In mid-July the Secretary sent out a news release noting that, "Producers will vote on the entire order, including the proposed amendments, as a package." Some growers (notably Sunkist Growers, Inc.) apparently feeling they were being put in an unfair position by the package voting, lobbied the Secretary and Congress intensively for different voting procedures.[2] An initial ballot was mailed out allowing only for a vote in favor of the amended order in its entirety or in favor of terminating the marketing order.

In late July, the Secretary reversed his position and sent out a notice amending the referendum order "to permit producers to vote on each of the proposed amendments." 49 Fed.Reg. 32080 (Aug. 10, 1984). Regardless of the votes on each amendment "the marketing orders [would be] contin-

---

**1.** The proposals dealt with amending both a marketing order related to navel oranges and an order relating to Valencia oranges. Only the Valencia Marketing Order is at issue in this appeal.

**2.** The legislative efforts of the growers opposing the all-or-nothing approach to the amendments were successful. Congress attached "riders" to two agricultural appropriations bills stipulating that funds were contingent upon the Secretary allowing growers to vote for amendments to marketing orders separately. *See* Act of August 22, 1984, Pub.L. No. 98–396, 1984 U.S.C.C.A.N. (98 Stat.) 1369; Act of October 12, 1984, Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 1837.

ued." *Id.* New ballots were mailed. The growers ratified 13 of the 21 amendments.

The appellant, Sequoia Orange Co., a handler of Valencia oranges,[3] filed a petition with the Secretary challenging the validity of the amended marketing order. An administrative law judge ruled that the amendment to the referendum order changing the voting procedures was invalid because "it was not based on stated reasons showing its purpose" and was tainted by "improper considerations." The final rule that resulted from the referendum therefore also was invalid. A Judicial Officer for the Secretary reversed, believing that the referendum procedure was a discretionary matter of agency procedure.

Sequoia filed suit in district court claiming that the amended order was invalid because (1) separate voting on the amendments violated the AMAA; (2) the voting scheme was unconstitutional; (3) the decision to change the voting procedures was arbitrary and capricious; and (4) the new voting procedures did not comply with the requirements of the APA. On cross-motions for summary judgment, the district court ruled that the amended order was invalid because the change in referendum procedures was made without complying with the APA. The court left it to the Secretary to decide how to proceed.

## DISCUSSION

■■■ The basis for the district court's jurisdiction and the grant of summary judgment are reviewed de novo. *KOLA, Inc. v. United States,* 882 F.2d 361, 363 (9th Cir.1989). We must determine if the district court correctly applied the relevant law. *See Guaranty Nat'l Ins. Co. v. Gates,* 916 F.2d 508, 511 (9th Cir.1990). However, a correct result may be affirmed on alternative grounds. *KOLA,* 882 F.2d at 363.

We agree with the simple approach of the district court in this complex case. The basic question is whether the Secretary's action of changing the procedure for approving the amendments was subject to the APA's notice and comment provisions.

## I.

■■■ The Secretary concedes that Sequoia has standing to challenge whether the Secretary complied with statutory requirements in issuing the amended order. *See also* 7 U.S.C. § 608c(15) (Under the AMAA any handler subject to an order may appeal to the Secretary claiming the order "is not in accordance with law." The district courts are vested with equity jurisdiction to "review such ruling."); 5 U.S.C. § 702 (APA). However, the Secretary raises two initial objections to judicial review of his decision. He argues that judicial review is not appropriate because the details of conducting a voter referendum are committed to his exclusive discretion by law and that judicial review is impossible because there are no meaningful standards against which to judge the action.

## A.

The Secretary acknowledges that notice and a hearing are required before the issuance of an amendatory order. He argues, however, that because the language in the AMAA itself only states that "the Secretary *may* conduct a referendum" to determine grower approval, 7 U.S.C. § 608c(19) (emphasis added), and does not include any statutory language limiting the Secretary's discretion, the referendum procedures are delegated solely to the Secretary's discretion. If an action is "committed to agency discretion by law" there is no review under the APA. 5 U.S.C. § 701(a)(2).

The Secretary relies on *Freeman v. Hygeia Dairy Co.,* 326 F.2d 271 (5th Cir.1964). In *Freeman* a milk handler challenged the Secretary's method of conducting a referendum among milk producers to amend a milk marketing order. *Id.* at 272. The order expanded the area covered by regulation from seven to nine counties. *Id.* Af-

---

**3.** A handler is a person or organization "engaged in the handling of any agricultural commodity." 7 U.S.C. § 608c(1). The marketing order has a direct impact on the activities of handlers.

ter a notice and hearing, "The Secretary directed that a referendum be conducted among ... the nine counties which would be covered by the amended order." *Id.* The handler complained that there should have been two separate referendums, one among the original seven counties and another among the two counties to be "annexed." *Id.* at 273. The court rejected that argument and stated that "the details of a referendum, and the manner in which it is conducted, must be left exclusively in the hands of the Secretary." *Id.* The Secretary believes that in this case as well the procedure for the referendum lies exclusively in his discretion.

The present appeal presents a different question than the one presented in *Freeman. Freeman* notes that "judicial review of an order which the Secretary has promulgated is limited to a review of the record from the administrative proceedings and to [a] determination whether such order was issued in accordance with law." *Id.* In *Freeman* the referendum order, and the method of conducting the referendum, were promulgated after all of the statutory requirements (including notice and hearing) were met. *Id.* at 274. In this appeal, however, Sequoia challenges the reversal of a choice of a voting method originally decided after a notice and hearing. Sequoia is challenging both the procedural process and the substantive decision. Unlike the *Freeman* case, there is no administrative record to review the abrupt decision to change the voting procedure. *Freeman* is different because Sequoia is arguing that the amended order was not issued in accordance with the law. *See Consolidated–Tomoka Land Co. v. Butz,* 498 F.2d 1208, 1209–10 (5th Cir.1974) (upholding district court's finding that a producers' referendum was invalid "because it was not conducted in accordance with the provisions of [the AMAA] and the regulations issued by the Department of Agriculture" and questioning the vitality of *Freeman* after intervening legislation making producers' referendums mandatory).

Judicial review is proper to determine if the Secretary complied with the procedural requirements of both the AMAA and the APA in amending the marketing order.

### B.

■ The Secretary also argues that there are no meaningful standards against which to judge the Secretary's choice of referendum procedures because the statute leaves the referendum process to the Secretary's discretion. Where a statute is drawn so broadly that there "is no law to apply" a court will not review an agency action. *See Western Medical Enters., Inc. v. Heckler,* 783 F.2d 1376, 1380 (9th Cir. 1986) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971)). This exception to the general rule of judicial review under the APA is a narrow one. *Id.* Furthermore, this determination is made on a case-by-case basis. *See Abdelhamid v. Ilchert,* 774 F.2d 1447, 1449 (9th Cir.1985); *Suntex Dairy v. Block,* 666 F.2d 158, 164 (5th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 59, 74 L.Ed.2d 62 (1982).

In the present context, judicial review is not precluded. The AMAA does not state specifically that the Secretary's management of referendum procedures is exempt from review. Although the statute gives the Secretary discretion to conduct a referendum to determine producer approval, judicial review is appropriate in this case. Sequoia contends that the Secretary failed to comply with the APA's notice and comment provisions in altering the referendum procedures. The procedural process used to decide on referendum procedures is open to review. The APA and the AMAA provide the legal requirements that the Secretary must follow.

The Secretary relies on *Suntex Dairy,* 666 F.2d at 163, which committed to the Secretary's discretion the power to make findings that implementation of a marketing order was "the only practical means" to advance the declared policy of the AMAA. The Secretary's reliance on this case is misplaced. The Secretary's finding in *Suntex Dairy* followed directly from a tendency finding reached after proper notice and a hearing. *Id.* at 162. *Suntex Dairy* is

not applicable to an attack on the legality of the administrative process utilized by the Secretary.

## II.

▮ The district court invalidated the amended marketing order because it concluded that the Secretary failed to comply with the APA's notice and comment provisions when he altered the referendum procedures. The Secretary argues that the method of voting on amendments was an internal "rule[ ] of agency organization, procedure or practice" not subject to the APA's notice and comment provisions.[4]  5 U.S.C. § 553(b)(A); *see Southern Cal. Edison Co. v. F.E.R.C.*, 770 F.2d 779, 783 (9th Cir.1985). Sequoia argues that the change in voting procedures was a substantive rule because it determined of the rights and interests of affected parties.

We have "rejected the notion that procedural rules with a substantive impact are subject to the notice and comment requirements." *Southern Cal. Edison Co.*, 770 F.2d at 783 (citing *Rivera v. Becerra*, 714 F.2d 887, 890–91 (9th Cir.1983)). Nevertheless, the APA's exception for procedural rules usually is interpreted narrowly. *See Reeder v. Federal Communications Comm'n*, 865 F.2d 1298, 1305 (D.C.Cir. 1989); *American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1044–45 (D.C.Cir.1987). The line between a substantive and a procedural rule is a "hazy" one. *American Hosp. Ass'n*, 834 F.2d at 1045. In this case, an overall view of the administrative action supports the district court's decision.

The first notice the Secretary published in the Federal Register indicated that the decision to amend the marketing order was rulemaking governed by the APA. 48 Fed. Reg. 11276, 11277 (March 17, 1983). This statement bound the Secretary to follow the procedural dictates of the APA. *See, e.g., Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092, 1095 n. 6 (5th Cir.1976); *Rodway v. United States Dep't of Agriculture*, 514 F.2d 809, 814 (D.C.Cir.1975). The original decision of the Secretary was made after a lengthy hearing and the review of extensive written comments. *See* 49 Fed. Reg. 29071 (July 18, 1984). The decision included a tendency finding that the marketing order, as amended therein, effectuated the terms of the AMAA. *Id.* at 29094. The decision adopted an all-or-nothing approach to the slate of amendments and made at least an implicit value judgment that without the amendments the marketing order should be terminated. The appellant's brief itself states that, "The Secretary believed that by forcing an up-or-down vote on the entire order, including all the amendments, he could force producers to accept all the amendments."

When confronted with industry pressure, the Secretary relented. After the final decision and proposed rule had been announced, and a ballot had been mailed to all growers, the Secretary changed his decision in respect to the voting procedure. No real explanation was provided for the reversal. There was no new tendency finding that with partial adoption of the proposed amendments the amended order would further the purposes of the AMAA.

In concluding that the decision to alter the voting procedures was subject to the APA, the district court relied on *Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092 (5th Cir.1976). In *Arlington Mills* the Secretary of Agriculture, after notice and hearings pursuant to the APA, made an initial decision on a crucial aspect of a peanut price support program (adjusting price support levels among various types of

---

**4.** The Secretary implies that an "arbitrary and capricious" standard of review should be applied to the Secretary's decision not to comply with the notice and comment provisions of the APA. There is no authority for this proposition. The agency's characterization of a rule as procedural is not determinative. *See San Diego Air Sports, Ctr., Inc. v. F.A.A.*, 887 F.2d 966, 970 (9th Cir.1989). The APA's language is mandatory (notice shall be given and interested persons shall be given an opportunity to participate). 5 U.S.C. § 553. Complying with the notice and comment provisions of the APA is not a matter of agency choice. *See* 5 U.S.C. § 706(2)(D) (The reviewing court shall set aside agency action found to be "without observance of procedure required by law."); 887 F.2d at 971 ("A substantive rule is invalid if the issuing agency fails to comply with the APA.").

peanuts). *Id.* at 1096. Following this announcement, farmers and shellers of peanuts protested, met with officials from the Department of Agriculture, and called upon "influential congressmen" to exert political pressure on the Department. *Id.* at 1097. As in the present case, the efforts were successful. Without providing notice of his intention to reconsider the order or requesting any comment from the industry in general, the Secretary revoked the decision. *Id.* The Fifth Circuit held that the revocation of the original decision was invalid because the APA required the Secretary "to provide adequate notice that reconsideration was underway and to give all interested persons a reasonable opportunity to participate." *Id.* at 1099. Similarly, the district court in this case felt the Secretary could not change a decision reached after notice and hearing without complying with the APA.

The reasoning of *Arlington Mills* is relevant. We agree with its observation that the notice and hearing requirements might be meaningless "if after announcement of a rule, the agency could closet its intent to reconsider and completely undo the rule first made." *Id.* at 1100.

Another case cited by the district court, *Walter Holm & Co. v. Hardin*, 449 F.2d 1009 (D.C.Cir.1971), also is persuasive. In *Hardin* the court found that regulations issued pursuant to a marketing order should not have been issued without following the procedural safeguards of the APA. *See id.* at 1016. The court explained:

> The essential point is that a procedure not requiring an opportunity for oral presentation to the Department on crucial matters, and not requiring evidence in the record, is a seed bed for the weed of industry domination. When the Secretary comes himself to make a determination of crucial facts and conclusions, he must think in terms of support in evidence and general standards, and cannot

be guided solely by deference to industry desires.

*Id.* The procedural safeguards of the APA help ensure that government agencies are accountable and their decisions are reasoned. *See American Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C.Cir.1980); *Rodway v. United States Dep't of Agriculture*, 514 F.2d 809, 817 (D.C.Cir.1975) (APA's purpose is to cause agency to respond to comments in a reasoned manner and explain how agency resolved problems). These safeguards should have been observed in this case.

The Secretary's original tendency finding concluded that, with twenty-one amendments, the marketing order would effectuate the purposes of the AMAA. 49 Fed. Reg. 29071, 29088 (July 18, 1984). The decision also indicated that without these amendments the marketing order should be terminated. *Id.* In changing the voting procedure to allow the amendments to be voted on individually, the Secretary disregarded the tendency finding made in his proposed order. With the new voting procedure the order could survive with only partial adoption of the slate of amendments originally proposed. This change in course was not proper because the procedures of the APA were not followed and the Secretary failed to make a proper tendency finding as required by the AMAA. *See* 7 U.S.C. § 608c(4).

Many of the problems that Sequoia complains of, the *ex parte* contacts, the consideration of improper factors, Sunkist's alleged domination of the industry through bloc voting, and political pressure, would have been avoided or diminished by following the APA's procedures. Even if these problems are not as real and significant as alleged by Sequoia,[5] the appearance and integrity of the decision-making process would have benefited from a more formal procedure. The Secretary led parties to believe that the referendum procedure was a contested issue. In the notice of the

---

5. The Deputy Secretary of Agriculture, John Ford, stated in a declaration that "the Secretary was in effect politically blackmailed into abruptly and without rational reason or legal justification changing the Final Decision. Despite three years, hundreds of thousands of dollars,

and hundreds of thousands of hours in this proceeding, the basic decision and the resulting outcome of it was made in a one-minute or three-minute phone call from the president of Sunkist, R.L. Hanlin, to the Secretary."

proposed amendments, the Secretary noted that one company, Exeter Orange Co., filed a written exception that "discussed referendum procedure issues." 49 Fed.Reg. 29071, 29074 (July 18, 1984). The Secretary responded that, "[T]his decision contains ... the procedures to be observed in such referenda." *Id.* The vigorous objection to the voting procedure originally decided upon illustrates that the referendum procedure was an important part of the entire proposal to amend the marketing order and not merely a procedural nicety. The Secretary was bound to follow the APA in reversing his original decision.[6]

### III.

The district court invalidated the amended marketing order and left it to the Secretary to decide how to proceed. Sequoia would like us to go further. Sequoia believes the decision to change the referendum procedure was arbitrary and capricious, so we should overturn the decision and remand to the Secretary with instructions to limit the approval referendum for the marketing order to a vote on a single package. We decline Sequoia's invitation.

An agency action should be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Southern Cal. Edison Co. v. F.E.R.C.*, 770 F.2d 779, 782 (9th Cir.1985). Sequoia asserts that the procedural irregularities in adopting the new voting procedures rendered the action arbitrary. However, in light of our holding that the APA's notice and comment provisions applied to the Secretary's action, a remand to allow these procedures to be followed is adequate.

Sequoia also maintains that the change in voting procedure was inconsistent with the statutory scheme, the Secretary's regulations, and the spirit of the AMAA and the policies of the Department of Agriculture. These are questions properly addressed first by the Secretary upon remand.

A remand with specific instructions on how the Secretary should hold the referendum is too great a step. As the district court noted, many years have now passed. The "procedural invalidity [of the decision to change the voting procedure does not warrant] ... the total displacement by the court of the Secretary's function." *Arlington Oil Mills*, 543 F.2d at 1101. We leave it to the Secretary to proceed. *See id.*

### IV.

Finally, Sequoia argues that the voting scheme unconstitutionally delegated law-making to a minority of growers. This argument is untenable. In *United States v. Rock Royal Co-op.*, 307 U.S. 533, 577–78, 59 S.Ct. 993, 1014–15, 83 L.Ed. 1446 (1939), the Court upheld the AMAA's requirement of producer approval of marketing orders. The Court cited *Currin v. Wallace*, 306 U.S. 1, 16, 59 S.Ct. 379, 387, 83 L.Ed. 441 (1939), which stated that requiring producer approval of a regulation was not an unconstitutional delegation of power but a legitimate condition precedent to the exercise of authority. The Secretary's determination that amendments were necessary to the marketing order, and his implicit determination to implement an order with only those amendments approved by 75% of the growers (or growers growing two-thirds of the total crop) was not an unconstitutional delegation of power. *Cf. Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1488 (9th Cir.1992) ("the Secretary is free to seek advice from whatever sources he deems appropriate, so long as he or his delegate ... retains ultimate authority") (citation omitted).

The decision of the district court is AFFIRMED.

AFFIRMED.

---

6. Sequoia also argues that the Department of Agriculture was required by the Freedom of Information Act to publish it in the Federal Register. 5 U.S.C. § 552(a). This argument is meritless. Notice was published in the Federal Register. 49 Fed.Reg. 32080 (Aug. 10, 1984).

Furthermore, the action could not be challenged on this basis by Sequoia because Sequoia has failed to show that it was prejudiced by the alleged lack of publication. *See Coos–Curry Elec. Co-op. v. Jura*, 821 F.2d 1341, 1347 (9th Cir.1987).